FILED
3/6/2015 2:12:03 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Cecilia Barbosa

ACCEPTED
04-15-00126-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/6/2015 5:17:26 PM
KEITH HOTTLE
CLERK

CAUSE NO. 2014-CI-17188

| | | |
|---|---|---|
| KINGMAN HOLDINGS, L.L.C., as Trustee of the MANDERLY PLACE 8118 LAND TRUST, | § § § | IN THE DISTRICT COURT |
| *Plaintiff*, | § § § | |
| v. | § § § | |
| WELLS FARGO BANK, N.A., as Trustee for SECURITIZED ASSET BACKED RECEIVABLES L.L.C. 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-FR4 and FREMONT REORGANIZING CORPORATION f/k/a FREMONT INVESTMENT & LOAN, | § § § § § § § § | 73RD JUDICIAL DISTRICT |
| *Defendants*. | § § | BEXAR COUNTY, TEXAS |

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/6/2015 5:17:26 PM
KEITH E. HOTTLE
Clerk

### DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF APPEAL

Notice is hereby given that Defendant Wells Fargo Bank, N.A., as Trustee for Securitized Asset Backed Receivables L.L.C. 2005-FR4 Mortgage Pass-Through Certificates Series 2005-FR4 ("Defendant") appeals from the trial court's Final Default Judgment, signed on January 21, 2015, in the above-styled and numbered case. This notice and appeal encompass the rulings, declarations, and awards adverse to Defendant in the Final Default Judgment, as well as all pre-trial and post-trial orders and rulings adverse to Defendant that were incorporated into, merged into, issued concurrently with, and/or relied upon in making the Final Default Judgment, and also any post-judgment orders or rulings adverse to Defendant. *See* **Exhibit A** (Motion for New Trial).[1]

---

[1] Attached hereto and incorporated herein by reference as Exhibit A is a true and correct copy of Defendant's Motion for New Trial filed on February 20, 2015 (the "Motion"). Although the Motion's caption correctly identified the parties and court and the substance and exhibits to the Motion unequivocally indicate that the Motion was filed to challenge the Final Default Judgment signed on January 21, 2015, in the above-entitled cause, Cause No. 2014-CI-17188, the Motion was inadvertently filed under Cause No. 2014-CI-18120. Although Defendant believes the Motion should be deemed timely and properly filed for all purposes in this matter, out of an abundance of caution, Defendant has attached a true and correct copy of the Motion to this Notice.

**DEFENDANT WELLS FARGO BANK, N.A.'S NOTICE OF APPEAL**                    **PAGE 1 OF 3**
AUS:0103793/00286:572986v1

This appeal is taken to the Court of Appeals for the Fourth District of Texas at San Antonio.

Respectfully submitted,

LOCKE LORD LLP

By: _____

**B. David L. Foster**
State Bar No. 24031555
**John W. Ellis**
State Bar No. 24078473
600 Congress Ave., Suite 2200
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Facsimile)
dfoster@lockelord.com
jellis@lockelord.com

**Thomas G. Yoxall**
State Bar No. 00785304
**Kirsten M. Castañeda**
State Bar No. 00792401
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000
(214) 740-8800 (Facsimile)
tyoxall@lockelord.com
kcastaneda@lockelord.com

**ATTORNEYS FOR DEFENDANT WELLS FARGO BANK, N.A., AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES L.L.C. 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-FR4**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this 6th day of March 2015, via electronic service to all counsel of record registered with the Court's electronic filing manager and as indicated below to the following:

**VIA EMAIL(justin@thenicholslawfirm.com)**
Justin P. Nichols
Justin D. Niedens
The Nichols Law Firm, P.L.L.C.
106 S. Saint Mary's St., Suite 255
San Antonio, Texas 78205
***Attorneys for Plaintiff***

_____
John W. Ellis

# Exhibit A

FILED
2/20/2015 3:59:06 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Lisa Sanchez

CAUSE NO. 2014-CI-18120

| | | |
|---|---|---|
| KINGMAN HOLDINGS, L.L.C., as | § | IN THE DISTRICT COURT |
| Trustee of the MANDERLY PLACE 8118 | § | |
| LAND TRUST, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| WELLS FARGO BANK, N.A., as Trustee | § | 73RD JUDICIAL DISTRICT |
| for SECURITIZED ASSET BACKED | § | |
| RECEIVABLES L.L.C. 2005-FR4 | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES 2005-FR4 and | § | |
| FREMONT REORGANIZING | § | |
| CORPORATION f/k/a FREMONT | § | |
| INVESTMENT & LOAN, | § | BEXAR COUNTY, TEXAS |
| *Defendants*. | § | |

### DEFENDANT WELLS FARGO BANK, N.A.'S MOTION FOR NEW TRIAL

Pursuant to Texas Rule of Civil Procedure 320, Defendant Wells Fargo Bank, N.A., as Trustee for Securitized Asset Backed Receivables L.L.C. 2005-FR4 Mortgage Pass-Through Certificates 2005-FR4 ("Wells Fargo") files this Motion for New Trial ("Motion"). In support thereof, Wells Fargo respectfully shows the Court as follows:

### I. INTRODUCTION

On January 21, 2015, Plaintiff Kingman Holdings, L.L.C., as Trustee of the Manderly Place 8118 Land Trust ("Plaintiff") obtained a no-answer default judgment (the "Default Judgment") against Wells Fargo and the other named defendant, Fremont Reorganizing Corporation f/k/a Fremont Investment & Loan ("Fremont"). Wells Fargo did not answer the Petition in this matter for a very simple reason: it was never served with a citation or the Petition in compliance with the applicable rules, and, thus, no answer was due. Plaintiff's failure to comply with basic service of process requirements renders the Default Judgment void. The

Court should vacate the Default Judgment and grant a new trial because Wells Fargo was not properly served with Plaintiff's Original Petition (the "Petition"). Specifically, the Court should vacate the default judgment and grant a new trial because the citation and Petition were not issued to or served on Wells Fargo's registered agent. Accordingly, service was not effected in strict compliance with the Texas service rules, and therefore, the Court should vacate the Default Judgment and grant a new trial. The Court should also grant a new trial because the factual allegations in Plaintiff's Petition fail state a claim for the requested relief. Wells Fargo is ready, willing and able to defend this case on the merits.

## II.    BACKGROUND FACTS

### A.    Wells Fargo Is a Nonresident Financial Institution.

Wells Fargo is a foreign financial institution. As a national banking association, Wells Fargo's citizenship is determined solely by the location of its main office, as designated in its articles of association. *See* 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). Wells Fargo's main office is located in the State of South Dakota. *See* **Ex. A-1**.[1] Thus, Wells Fargo is a citizen of the South Dakota.

### B.    As a Nonresident Financial Institution and Pursuant to Texas Civil Practice & Remedies Code Section 17.028, Wells Fargo Has Designated a Registered Agent to Accept Service of Process on its Behalf.

For all relevant periods, Wells Fargo has continuously designated and maintained a registered agent with the Texas Secretary of State ("Secretary of State").[2] *See* **Ex. A-2, A-3,**

---

[1] Pursuant to Texas Rule of Evidence 201, Wells Fargo requests that the Court take judicial notice of the public government records that are attached to this Motion through the Declaration of John W. Ellis and incorporated herein as **Exhibits A-1, A-2, A-3, A-4, A-5**. Specifically, the Court may access the public information attached as Exhibits A-1 and A-5 through the Federal Deposit Insurance Corporation's online BankFind website http://research.fdic.gov/bankfind/index.html (search by FDIC # "3511" and select the result for Institution Name "Wells Fargo Bank, National Association." The "Overview" tab of the BankFind website shows Wells Fargo's headquarters, and the "Locations" tab shows information for branch locations.)

[2] Wells Fargo also requests that the Court take judicial notice of the fact that it has a registered agent and had a registered agent at the time Plaintiff filed suit. *See* TEX. R. EVID. 201. Attached as **Exhibits A-2, A-3, and A-4** to

**A-4**.  Wells Fargo's registered agent is Corporation Service Company, 211 E 7th Street, Suite 620, Austin, Texas 78701-3218.  *See* **Ex. A-2, Ex. A-3, Ex. A-4.**

### C.    Plaintiff Failed to Attempt to Serve Wells Fargo's Registered Agent.

On October 30, 2013, Plaintiff filed its Petition asserting a claim for quiet title and request for declaratory judgment against Wells Fargo and Fremont.  *See* Pet. at ¶¶ 9-22.  Instead of requesting service through Wells Fargo's registered agent as required by section 17.028 of the Texas Civil Practice and Remedies Code, Plaintiff's Petition erroneously requested substitute service to Wells Fargo through the Texas Secretary of State.  *See* Pet. at ¶ 3.  In the Petition, Plaintiff never alleged that it attempted to serve Wells Fargo's registered agent or that Wells Fargo does not maintain a registered agent to receive service in Texas.  *See id.*  Nonetheless, Plaintiff purported to serve the Petition on Wells Fargo through the Texas Secretary of State. *See id.* at ¶ 3.  Plaintiff also requested that the Secretary of State forward a copy of the citation and Petition to Wells Fargo at the following address: Wells Fargo Bank, N.A., Trustee, 420 Montgomery Street, San Francisco, California 94104.  *Id.* at ¶ 3.

In November 2014, the secretary of state forwarded copies of the citation and Petition to Wells Fargo at the address above, despite the fact that Wells Fargo maintains a registered agent on file with the secretary of state at a different address.  **Ex. A-2, Ex. A-4**.  Return receipts for Wells Fargo were received by the secretary of state and filed with the Court on January 2015. (*See* P00007 Certificate of Service from Secretary of State, which is part of the Court's file and attached hereto and incorporated herein as **Exhibit B**.)  Plaintiff's process server also filed a return affidavit.  (*See* Return Affidavit, which is part of the Court's file and attached hereto and

---

the Declaration of John W. Ellis, which is attached hereto and incorporated herein as **Exhibit A**, Wells Fargo submits copies of printouts from the Texas Secretary of State's public website that show Wells Fargo's registered agent and the continuous history of maintaining an agent.  The Court may independently verify the authenticity of the printouts and facts therein by visiting the Secretary of State's website, called SOS Direct https://direct.sos.state.tx.us/acct/acct-login.asp, and searching by either entity name "Wells Fargo Bank, National Association" or entity/filing number "8832."

incorporated herein as **Exhibit F**.) On January 21, 2015, the Court entered the Default Judgment. (*See* O00001 Default Judgment, which is part of the Court's file and attached hereto and incorporated herein as **Exhibit C**.)

<h3 style="text-align:center">III.     <u>ARGUMENTS AND AUTHORITIES</u></h3>

This Court should vacate the default judgment. Wells Fargo was not served in strict compliance with Texas service of process rules. As such, Wells Fargo was not served at all. Because Wells Fargo has not been served, the default judgment entered against it is void and this Court should vacate it. Additionally, the default judgment should be vacated because the allegations in Plaintiff's Petition do not support a claim upon which relief may be granted.

**A.     This Court Should Vacate the Default Judgment and Grant Wells Fargo's Motion for New Trial.**

A defendant can demonstrate entitlement to a new trial after a no-answer default in one of two ways. *MobileVision Imaging Servs., LLC v. LifeCare Hospitals of N. Tex., L.P.*, 260 S.W.3d 561, 564 (Tex. App.—Dallas 2008, no pet.). If defendant was served, it must prove the elements set forth in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939). *Id.* However, if defendant was never served, it is generally granted a new trial without any further showing. *Id.*; *see also Fid. & Guar. Ins. Co. v. Drewery Constr. Co., Inc.*, 186 S.W.3d 571, 574 (Tex. 2006) (per curiam). Moreover, "[r]eceiving suit papers or actual notice through a procedure not authorized for service is treated the same as never receiving them." *Fid. & Guar. Ins.*, 186 S.W.3d at 574 n.1; *see also Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990) ("Actual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against him."); *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 376–79 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (reversing default judgment without reaching *Craddock* elements after concluding that service

AUS:0103793/00000:571102v3

was defective); *Medtek Lighting Corp. v. Jackson*, No. 05–04–00335–CV, 2005 WL 2002159, at *2 (Tex. App.—Dallas Aug. 22, 2005, pet. denied) (mem. op.) ("A default judgment entered following substituted service [on the secretary of state] is improper against a defendant who has not been served in strict compliance with the rules relating to service of citation, even if the defendant had actual notice of the lawsuit.").

Additionally, "[t]he plaintiff has the burden of affirmatively showing strict compliance with the [long-arm] statute." *Boreham v. Hartsell*, 826 S.W.2d 193, 195 (Tex. App.—Dallas 1992, no writ). When plaintiff relies on service through the secretary of state, the record must establish that (1) defendant was permitted to be served through the secretary of state, and (2) defendant was served in the manner mandated by the statute allowing service through the secretary of state. *Allodial Ltd. P'ship v. Susan Barilich, P.C.*, 184 S.W.3d 405, 408 (Tex. App.—Dallas 2006, no pet.). "Virtually any deviation from the statutory requisites for service of process will destroy a default judgment." *Carmona v. Bunzl Distrib.*, 76 S.W.3d 566, 568-69 (Tex. App.—Corpus Christi 2002, no pet.).

Here, Plaintiff purported to serve Wells Fargo, a financial institution, through the secretary of state. Because Wells Fargo was not amenable to service through the secretary of state, such purported service did not constitute service and Wells Fargo was never served. Thus, the Court should vacate the default judgment and grant Wells Fargo's timely Motion. *See* TEX. R. CIV. P. 329b(a).

**B.     Wells Fargo Was Not Served.**

### 1. *Plaintiff Failed to Serve Wells Fargo Through its Registered Agent.*

Wells Fargo is a financial institution on which citation can be served by serving its registered agent. TEX. CIV. PRAC. & REM. CODE § 17.028(a) & (b)(1); TEX. FIN. CODE § 201.101. Out-of-state financial institutions—like Wells Fargo—are required to register with

the secretary of state in accordance with laws applicable to foreign corporations. TEX. FIN. CODE § 201.102; *see also* **Ex. A-1** (noting headquarters in Sioux Falls, South Dakota); *Wells Fargo Bank, N.A. v. Anderson,* 2011 WL 1135121 at * 3 (N.D. Tex. Mar. 28, 2011) (holding that Wells Fargo is a citizen of South Dakota for diversity purposes since its main offices are located there, as designated in the articles of association); *Salomon v. Wells Fargo Bank, N.A.,* 2010 WL 2545593 at * 1 (W.D. Tex. June 21, 2010) (same). Those laws require foreign corporations, and therefore out-of-state financial institutions, to designate an agent for service of process when registering with the secretary of state. *See* TEX. BUS. ORG. CODE §§ 5.201, 5.206, 9.001(a)(1), 9.004(b)(9). If a nonresident defendant has designated an agent for service in Texas, a plaintiff <u>cannot</u> use the general long-arm statute to serve the nonresident. *See McKanna v. Edgar*, 388 S.W.2d 927, 929-30 (Tex. 1965); *Bank of New York v. Chesapeake 34771 Land Trust*, ___ S.W.3d ___; No. 08-13-00252-CV, 2015 WL 228159, at *3 (Tex. App.—El Paso Jan. 16, 2015) ("Service of process on the Bank was ineffective because it was not effectuated pursuant to Section 17.028. A party suing a financial institution in Texas must serve process on the institution in accordance with Section 17.028; otherwise, service is ineffective.").

Throughout the duration of this lawsuit, Wells Fargo has continuously designated and maintained the following registered agent with the Texas Secretary of State: Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218. *See* **Ex. A-2, A-3, A-4**. Therefore, to effect proper and actual service of process, Plaintiff was required to serve Wells Fargo's registered agent, and <u>only if</u> Wells Fargo did not have a registered agent, Plaintiff could have then served the "president or a branch manager at any office . . . ." of Wells Fargo. TEX. CIV. PRAC. & REM. CODE § 17.028(a) & (b)(1)-(b)(2). Because Wells Fargo had a registered agent and Plaintiff did not attempt to serve Wells Fargo's registered agent, no valid service of

process occurred under Texas law. *Id.* Moreover, even if Wells Fargo did not have a registered agent and Plaintiff could serve the president or branch manager of Wells Fargo, that is not the case here because Plaintiff never attempted service in that manner either. *See* **Ex. A-5** (indicating that Wells Fargo has more than 600 office locations in Texas).

### 2. Plaintiff Was Not Permitted to Serve Wells Fargo Through the Texas Secretary of State, Which Constitutes Substituted Service.

No Texas statute authorized Plaintiff to serve Wells Fargo through the Secretary of State. Service through the Secretary of State is considered a form of substituted service: "The use of reasonable diligence in attempting to serve a corporation's agent is a prerequisite to attempting service through the secretary of state." *AAA Navi Corp. v. Parrot-Ice Drink Products of Am., Ltd.*, 119 S.W.3d 401, 403-04 (Tex. App.—Tyler 2003, no pet.); *see also McKanna*, 388 S.W.2d at 929 (holding that before secretary of state may be substituted for service, plaintiff must demonstrate defendant has no designated agent upon whom service may be made); *MobileVision*, 260 S.W.3d at 564 (reversing default judgment upon finding of invalid service of process where service through secretary of state and petition did not allege basis for substituted service); *Marrot Commc'ns, Inc.*, 227 S.W.3d at 377 (service through secretary of state not valid absent affirmative showing of reasonable diligence in attempting to serve registered agent); *Houston's Wild West, Inc. v. Salinas*, 690 S.W.2d 30, 32 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (reasonable diligence to serve registered agent is "prerequisite" to substituted service through secretary of state).

The two statutes regarding substituted service on the secretary of state are inapplicable here. First, Texas Business Organizations Code Section 5.251 provides:

> The secretary of state is an agent of an entity for purposes of service of process, notice, or demand on the entity if:
>    (1)   the entity is a filing entity or a foreign filing entity and:

> (A)   the entity fails to appoint or does not maintain a registered agent in this state; or
>
> (B)   the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity; or
>
> (2)   the entity is a foreign filing entity and:
>
> (A)   the entity's registration to do business under this code is revoked; or
>
> (B)   the entity transacts business in this state without being registered as required by Chapter 9.

TEX. BUS. ORG. CODE § 5.251. Here, the entire section is inapplicable to Wells Fargo because it has a registered agent, and Plaintiff did not make any attempt to serve the registered agent, and because Wells Fargo is qualified and registered to do business in Texas. *See* **Ex. A-2, Ex. A-3, Ex. A-4**.

Second, Texas Civil Practice and Remedies Code Section 17.044 provides:

> (a)   The secretary of state is an agent for service of process or complaint on a nonresident who:
>
> (1)   is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process;
>
> (2)   has one or more resident agents for service of process, but two unsuccessful attempts have been made on different business days to serve each agent; or
>
> (3)   is not required to designate an agent for service in this state, but becomes a nonresident after a cause of action arises in this state but before the cause is matured by suit in a court of competent jurisdiction.
>
> (b)   The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

TEX. CIV. PRAC. & REM. CODE § 17.044(a), (b). Again, this entire section is inapplicable to Wells Fargo, which maintains a registered agent as required and which Plaintiff never attempted to serve. *See* **Ex. A-2, Ex. A-3, Ex. A-4**.

Further, Plaintiff's Petition incorrectly alleges Wells Fargo is a "foreign trustee" and "may be served through the secretary of state." Pet. at ¶ 3. As the Eighth Court of Appeals recently held in a case with similar procedural history, the exception to registration requirements through the Texas Estates Code provision for designating the secretary of state as an agent for service of process is inapplicable in this context. *Bank of New York v. Chesapeake 34771 Land Trust*, ___ S.W.3d ___, No. 08-13-00252-CV, 2015 WL 228159, at *5 (Tex. App. Jan. 16, 2015); *see also* TEX. EST. CODE §§ 22.006, 505.002(a)(1), 505.004. As the *Bank of New York* court recognized: "[T]he appointment of the Secretary of State as the agent to receive service of process under Section [505.003 of the Texas Estates Code] is limited to matters related to an estate in which the foreign bank or trust company is acting as an executor, administrator, trustee, guardian of the estate, or in any other fiduciary capacity." *Bank of New York*, 2015 WL 228159, at *5. Here, Wells Fargo was not appointed as a fiduciary in the state of Texas. Moreover, Plaintiff's Petition fails to allege any underlying facts that would support a finding that Wells Fargo, in this case, is sued in its capacity as a foreign corporate fiduciary. *See id.*

Accordingly, putative service on Wells Fargo through the secretary of state is ineffective under Texas law, and Wells Fargo thereby has not been served. *See Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (failure to show "strict compliance" with service of process rules "renders the attempted service of process invalid and of no effect"); *MobileVision Imaging Servs., L.L.C. v. LifeCare Hospitals of N. Texas, L.P.*, 260 S.W.3d 561,

565 (Tex. App.—Dallas 2008, no pet.) ("The law is clear that reasonable notice or actual notice of a pending lawsuit cannot substitute for proper service of process.").

### 3. Even if Plaintiff Were Permitted to Serve Wells Fargo Through the Texas Secretary of State, the Address at which Plaintiff Served Wells Fargo Was Improper and Did Not Effect Service.

Even if service through the secretary of state would have been permissible, Plaintiff failed to serve Wells Fargo at its designated address for service. In attempting to serve Wells Fargo through the secretary of state, Plaintiff requested that the secretary of state forward a copy of the citation and Petition to Wells Fargo at the following address: 420 Montgomery Street, San Francisco, California 94104. Pet. at ¶ 3. However, this address is not an address designated by Wells Fargo for the receipt of service. Wells Fargo's registered agent—and proper address for service—is Corporation Service Company, 211 E 7th Street, Suite 620, Austin, Texas 78701-3218. **Ex. A-2, Ex. A-3, Ex. A-4**. Plaintiff failed to serve Wells Fargo at its agent's designated address.

### 4. The Return of Service Also Does Not Strictly Comply with the Requirement to Affirmatively Show that Wells Fargo Was Served.

The Court should also grant Wells Fargo's Motion because the record does not establish that Plaintiff strictly complied with the service requirements. A default judgment will be affirmed only if (1) the correct defendant was served; and (2) the petition describes facts such that the correct defendant knows it is the intended defendant. *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 188 S.W.3d 672, 677 (Tex. App—Tyler 2005) (emphasis added), *rev'd on other grounds*, 186 S.W.3d 571 (Tex. 2006). If not met, the threshold requirement that the return affirmatively show service on the person sued is case determinative. Indeed, without proper service on the correct defendant, notice is entirely irrelevant. Notice of a lawsuit—even actual notice—is not a substitute for proper service of process. *Wilson v. Dunn*, 800 S.W.2d 833, 836

(Tex. 1990) (holding that defendant's knowledge of suit and actual receipt of suit papers was not sufficient to invoke personal jurisdiction to support a default judgment in absence of properly issued and served citation).

Strict, not substantial, compliance is the standard. *Deustche Bank Nat'l Trust Co. v. Kingman Holdings, LLC*, No. 05-13-00943-CV, 2014 WL 3211887, at *3 (Tex. App.—Dallas July 8, 2014, no pet.) (mem. op.); *Rone Eng'g Serv., Ltd. v. Culberson*, 317 S.W.3d 506, 508 (Tex. App.—Dallas 2010, no pet.). Virtually any deviation from the requirements for service of process will defeat a default judgment *See Primate Constr. Inc. v. Silver,* 884 S.W.2d 151, 152 (Tex. 1994); *TAC Ams., Inc. v. Boothe*, 94 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.); *Dolly v. Aethos Comm'cns Sys., Inc.*, 10 S.W.3d 384, 388 (Tex. App.—Dallas 2000, no pet.); *Nueces County Housing Assistance, Inc. v. M & M Resources Corp.*, 806 S.W.2d 948, 949 (Tex. App.—Corpus Christi 1991, writ denied). Strict compliance is not established if the record does not affirmatively establish that the person named in the return of service is the same person sued. *E.g., Myan Mgmt.*, 292 S.W.3d at 753; *Lytle*, 261 S.W.3d at 840.

Here, Plaintiff's default judgment cannot stand because the return of service does not affirmatively show that the person served through and by the Secretary of State is the person purported to be served: Wells Fargo Bank, N.A., as Trustee for Securitized Asset Backed Receivables L.L.C. 2005-FR4 Mortgage Pass-Through Certificates 2005-FR4. *Compare* **Ex. E** (citation requesting service to "Wells Fargo Bank, N.A., as Trustee for Securitized Asset Backed Receivables L.L.C. 2005-FR4 Mortgage Pass-Through Certificates 2005-FR4"), *with* **Ex. F** (return claiming service through the secretary of state was delivered to "Wells Fargo NA as Trust For Securitized Asset Backed Receivables LLC"); *Myan Mgmt. Grp., L.L.C. v. Adam Sparks Family Revocable Trust*, 292 S.W.3d 750, 753 (Tex. App.—Dallas 2009, no pet.); *Lytle v.*

*Cunningham*, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no pet.); *see also Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985) (setting aside a no-answer default judgment where the registered agent for service was "Henry Bunting, Jr." but the return identifies person served as "Henry Bunting"); *Lytle v. Cunningham*, 261 S.W.3d 837, 840 (Tex. App.—Dallas 2008, no pet.) (setting aside no-answer default where registered agent's name stated on citation "Chris Lytle" but the return affidavit stated "Christopher Lytle" was person served).  In the return affidavit, the process server attests that the citation and petition were forwarded to "Wells Fargo NA as Trust For Securitized Asset Backed Receivables LLC."  *See* **Ex. F.**  The return of service has several blatant defects.  Notably, it fails to state the correct name for Wells Fargo Bank, N.A.  Also, it identifies "Wells Fargo NA" not as trustee, but as the "Trust."  Finally, the purported "Wells Fargo NA as Trust" fails to include the complete name of the trust identified in Plaintiff's Petition and the Citation.  *Compare* Pet. at ¶ 3, *and* **Ex. E**, *with* **Ex. F**.  These defects in service of process, alone, warrant granting Wells Fargo's Motion and vacating the Default Judgment.

> **5.**  ***Even if Service Were Permitted Through the Secretary of State and the Address Through Which Plaintiff Served Wells Fargo Were Proper, Plaintiff's Failure to Allege Wells Fargo Did Not Maintain a Place of Business in Texas Is Fatal to its Default Judgment.***

When a party purportedly serves a defendant based on substituted service, a default judgment cannot stand when a petition fails to allege that a defendant did not maintain a place of business in Texas.  *Onnela v. Medina*, 785 S.W.2d 423, 425 (Tex. App.—Corpus Christi 1990, no writ).  For example, in *MobileVision*, plaintiff alleged that a nonresident limited liability company (LLC) had a principal place of business in Michigan and could be served with process by serving the Secretary of State.  260 S.W.3d at 564.  However, the Court held that plaintiff did not strictly comply with long-arm statute and the allegations were insufficient to allow service on

the Secretary of State, even if the LLC had reasonable and actual notice before default judgment, because plaintiff failed to allege, among other things, that the LLC did not maintain a regular place of business in state.

In this case, like in *MobileVision*, nowhere in Plaintiff's Petition does it allege that Wells Fargo does not maintain a place of business in Texas. 260 S.W.3d at 564; *see also, e.g.*, *Medtek Lighting Corp.*, 2005 WL 2002159, at *2 (Tex. App.—Dallas Aug. 22, 2005, pet. denied) (mem. op.) (holding petition failed to satisfy section 17.044); *Redwood Group, L.L.C. v. Louiseau*, 113 S.W.3d 866, 870 (Tex.App.—Austin 2003, no pet.) (holding service was improper because plaintiff failed to allege that defendant did not appoint or maintain a registered agent in Texas). Because Plaintiff failed to allege that Wells Fargo did not maintain a place of business in Texas, the default judgment it obtained should be reversed.

**C.      Because Wells Fargo Was Not Served, the Default Judgment Is Void and Should Be Vacated.**

"Unless the record affirmatively shows, at the time the default judgment is entered, either an appearance by the defendant, proper service of citation on the defendant, or a written memorandum of waiver, the trial court does not have *in personam* jurisdiction to enter a default judgment against the defendant." *Autozone, Inc. v. Duenes*, 108 S.W.3d 917, 920 (Tex. App.—Corpus Christi 2003, no pet.). The record shows that no appearance was made and no written memorandum of waiver was filed. *See* **Ex. D** (copy of the Court's online docket summary for this cause number). The record also shows that no proper service was effected on Wells Fargo's registered agent. *See* **Ex. A-2, Ex. A-3, Ex. A-4, Ex. B, Ex. E** (copy of citation), **Ex. F** (copy of return). As discussed above, citation was not issued to or served on an agent authorized to accept service for Wells Fargo. *See supra* Part III.A-B. Thus, Plaintiff did not properly serve Wells Fargo.

A default judgment cannot stand unless the court, at the time of the judgment, had jurisdiction of the subject matter and parties to the suit. *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex. 1968) (before a trial court may properly render a default judgment, the record must reflect the trial court has jurisdiction over the subject matter and the parties and the case is ripe for judgment); *see also* TEX. R. CIV. P. 124 (requiring service, acceptance, waiver of process or appearance of defendant for judgment to be rendered). A defect in service of process invalidates personal jurisdiction over the defendant. *See Livanos v. Livanos*, 333 S.W.3d 868, 875 (Tex. App.—Houston 2010, no pet.) (reversing default judgment due to improper service of process); *Affiliated Computer Servs., Inc. v. Weeks*, No. 05–06–00996–CV, 2007 WL 2325820, at *2 (Tex. App.—Dallas Aug. 10, 2007, pet. denied) (mem. op.) (holding that trial court's jurisdiction was not validly invoked where the petition was sent to a registered agent, which was listed with the Secretary of State but marked "terminated" where the secretary of state's records also contained listing for company with "active" status); *AAA Navi Corp.*, 119 S.W.3d at 402 (same); *Ward v. Hooper*, No. 05-00-01903-CV, 2002 WL 15881, at *3 (Tex. App.—Dallas Jan. 8, 2002, no pet.) (reversing default judgment because of failure to show strict compliance with service of process where record clearly indicated that notice was sent to an incorrect address).

**D.      The Court Should Also Set Aside the Default Judgment Because Plaintiff Fails to State a Claim Supporting the Requested Relief.**

Independently of the service defects, the Court should grant Wells Fargo's Motion and set aside the Default Judgment because Plaintiff fails to state a claim upon which relief may be granted. Plaintiff's Petition attempted to pursue a claim for "a declaratory judgment declaring Plaintiff as the sole owner of the Property in fee simple, without any liens or other encumbrances, and declaring all deeds of trusts relating to the Property, or subsequent assignments, as void and extinguished." Pet. ¶ 20. Plaintiff also sought a duplicative judgment

AUS:0103793/00000:571102v3

"quieting title of the Property in favor of the Plaintiff as the sole owners of the Property in fee simple, without any liens or other encumbrances, and declaring all deeds of trust relating to the Property, or subsequent assignments, as void and extinguished." Pet. ¶ 21.

However, the factual allegations on which Plaintiff requested the above relief do not support the requested relief. Plaintiff acknowledges purchasing its interest in the underlying Property through a homeowners association's assessment lien foreclosure sale. *See* Pet. ¶ 13-14. Plaintiff also claims that, at the time it acquired its interest in the Property, Wells Fargo was the assignee of record to a certain deed of trust recorded in Volume 11275, Page 1338 of the Bexar County deed records. Pet. ¶ 9-11; *See* **Ex. G** (the "Deed of Trust"); **Ex. H** (the "Assignment")[3] To support Plaintiff's claims, the Petition includes the following pertinent allegations:

> 15. After purchasing the Property, Plaintiff attempted to contract Defendants to ascertain what interest, if any, they asserted in the Property or related liens. Plaintiff made such inquiries in order to determine its own rights in the Property, and to preserve such interests and rights, including the right to any equitable redemption in the event any Defendant claimed as superior lien to that of the Association's.
> 16. Plaintiff avers the purchase money deed of trust in favor of Fremont related to the Property was forfeited at the time of dissolution and forfeiture of right to do business in the state of Texas and/or by some other operation of law, waiver, defect in assignments, and/or multiple mortgages.
> 17. Further, upon information and belief, Wells Fargo has not collected any payments from Allen or other party towards any financial obligation giving rise to its deed of trust, and therefore, as a matter of law, has waived its interests and/or rights in the Property under the doctrine of waiver, estoppel, laches, and/or other law.

Pet. at ¶¶ 15-17.

The factual allegations on which Plaintiff expressly based its conclusion do not support the conclusion. "Waiver is the intentional relinquishment of a right actually known, or

---

[3] Attached hereto as Exhibit G and Exhibit H is a true and correct copy of the Deed of Trust and the Assignment, respectively, which are referenced in Plaintiff's Petition and recorded in the official real property records of Bexar County, Texas. Wells Fargo requests that the Court take judicial notice of the documents attached hereto and incorporated herein as Exhibit G and Exhibit H, which are available for public view and access at https://govapps1.propertyinfo.com/wam3/loginForm.asp?iWAMid=3.

intentional conduct inconsistent with claiming that right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). "To prove waiver, a party must show '(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right or intentional conduct inconsistent with the right.'" *Wiley v. U.S. Bank, N.A.*, No. 3:11-CV-1241-B, 2012 WL 1945614, at *6 (N.D. Tex. May 30, 2012) (quoting *Ulico Cas. Co.*, 262 S.W.3d at 778).

As an initial matter, Plaintiff's attempt to use the theory of waiver to support any of its claims in this lawsuit fails because it is well settled that "[w]aiver is an affirmative defense, not a cause of action, and does not operate to create liability" with respect to affirmative claims. *See Franklin v. BAC Home Loans Servicing, LP*, No. 3:10-CV-1174-M, 2012 WL 2679496, *12 (N.D. Tex. June 6, 2012); *Thomas v. Compass Bank*, No. 01-01-00467-CV, 2002 WL 1340333, at *4 (Tex. App.—Houston [1st Dist.] June 20, 2002, no pet.); *Kern v. GE Capital Info. Tech. Solutions*, No. 3:01-CV-2109-P, 2003 WL 22433817, at *8 (N.D. Tex. Feb. 19, 2003); *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988). Indeed, the theory of waiver is "defensive in nature" and does not create independent causes of action or "operate to create liability where it does not otherwise exist." *Hruska,* 747 S.W.2d at 785. Plaintiff's waiver argument fails as a matter of law for this reason alone.

Moreover, the very Deed of Trust that Plaintiff references in its Petition directly refutes Plaintiff's waiver theory. The Deed of Trust provides that:

> **12. Borrower Not Released; Forbearance By Lender Not a Waiver.**
> Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original

Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**Ex. G** at p. 10, ¶ 12. Where a deed of trust, like the Deed of Trust in this case, includes a nonwaiver provision expressly disclaiming any intent to waive the right to strictly enforce the terms of the deed of trust, Texas courts have rejected similar waiver arguments. *See, e.g.*, *Stephens v. LPP Mortg., Ltd.*, 316 S.W.3d 742, 748-49 (Tex. App.—Austin 2010, pet. denied); *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 911–12 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Veltmann v. Hoffman,* 621 S.W.2d 441, 442 (Tex. App.—San Antonio 1981, no writ) ("We know of no case holding that a lienholder who, at the request of the debtor, postpones a nonjudicial foreclosure sale in order to afford the debtor an opportunity to avoid loss of his land is to be penalized by being deprived of the right to foreclose."). Therefore, by the terms of the Deed of Trust, the factual allegations supporting Plaintiff's theory of waiver, even if true, do not support a conclusion that Wells Fargo's rights to enforce the terms of the Deed of Trust are waived by the borrower's alleged nonpayment.[4] *Marrot Commc'ns, Inc. v. Town & Country P'ship*, 227 S.W.3d 372, 378 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting the court may consider affidavit, depositions, testimony, and other exhibits in a motion for new trial).

Texas law requires reversal of a default judgment when the facts stated in the petition do not amount to a claim on which relief may be granted. *Calderoni v. Vasquez*, No. 03-11-00537-CV, 2012 WL 2509802, at *5 (Tex. App.—Austin June 26, 2012, no pet.) (mem. op.); *Pinter v.*

---

[4] Indeed, the allegation that a mortgagee's failure to collect payments from the mortgagor would render the lien void and waive the mortgagee's rights to enforce the lien is preposterous. If Plaintiff's allegations were true, then any default for nonpayment by a mortgagor would invalidate the lender's lien, and render meaningless, *inter alia*, entire provisions of the Texas Property Code. *See, e.g.*, TEX. PROP. CODE § 51.002 (providing for foreclosure requirements of a lien after a mortgagor's default).

*Asafi Law Firm*, No. 01-12-0048-CV, 2012 WL 5458426, at *3 (Tex. App.—Houston [1st Dist.] Nov. 8, 2012, no pet.) (mem. op.); *Hillson Steel Prods., Inc. v. Wirth Ltd.*, 538 S.W.2d 162, 166 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ). The factual allegations on which Plaintiff expressly based its declaratory judgment and quiet title claims, even if true, do not support a conclusion that Wells Fargo—the statutory mortgagee—has waived its rights under the Deed of Trust. For this additional reason, the default judgment should be reversed.

**E.     Wells Fargo Requests a Hearing.**

Wells Fargo is entitled to an evidentiary hearing on this Motion for New Trial. Wells Fargo hereby requests the Court set the Motion for hearing.

## IV.     <u>CONCLUSION AND PRAYER</u>

Because Plaintiff failed to properly serve Wells Fargo, the Court did not have personal jurisdiction over Wells Fargo, the Default Judgment is void, and it should be set aside. The Court should also set aside the Default Judgment because Plaintiff failed to plead a claim upon which relief may be granted. Accordingly, Wells Fargo respectfully pray the Court hold an evidentiary hearing on its Motion, grant its Motion for New Trial, vacate the Default Judgment in this cause dated January 21, 2015, and that the Court grant a new trial, and for all other and further relief to which it may be entitled.

Respectfully submitted,

LOCKE LORD LLP

By:

**B. David L. Foster**
State Bar No. 24031555
**John W. Ellis**
State Bar No. 24078473
600 Congress Ave., Suite 2200
Austin, Texas 78701
(512) 305-4700
(512) 305-4800 (Facsimile)
dfoster@lockelord.com
jellis@lockelord.com

**Thomas G. Yoxall**
State Bar No. 00785304
**Kirsten M. Castañeda**
State Bar No. 00792401
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201
(214) 740-8000
(214) 740-8800 (Facsimile)
tyoxall@lockelord.com
kcastaneda@lockelord.com
**ATTORNEYS FOR DEFENDANT**
**WELLS FARGO BANK, N.A., AS TRUSTEE**
**FOR SECURITIZED ASSET BACKED**
**RECEIVABLES L.L.C. 2005-FR4**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on this 20th day of February, 2015, via electronic service to all counsel of record registered with the Court's electronic filing manager and as indicated below to the following:

**VIA EMAIL(justin@thenicholslawfirm.com)**
**& Facsimile (800) 761-5782**
Justin P. Nichols
Justin D. Niedens
The Nichols Law Firm, P.L.L.C.
106 S. Saint Mary's St., Suite 255
San Antonio, Texas 78205
***Attorneys for Plaintiff***

John W. Ellis

# Exhibit A

| | | |
|---|---|---|
| KINGMAN HOLDINGS, L.L.C., as § | | IN THE DISTRICT COURT |
| Trustee of the MANDERLY PLACE 8118 § | | |
| LAND TRUST, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | |
| § | | |
| WELLS FARGO BANK, N.A., as Trustee § | | 73RD JUDICIAL DISTRICT |
| for SECURITIZED ASSET BACKED § | | |
| RECEIVABLES L.L.C. 2005-FR4 § | | |
| MORTGAGE PASS-THROUGH § | | |
| CERTIFICATES 2005-FR4 and § | | |
| FREMONT REORGANIZING § | | |
| CORPORATION f/k/a FREMONT § | | |
| INVESTMENT & LOAN, § | | BEXAR COUNTY, TEXAS |
| *Defendants.* § | | |

## AFFIDAVIT OF JOHN ELLIS

STATE OF TEXAS §
§
COUNTY OF TRAVIS §

BEFORE ME, the undersigned authority, personally appeared John W. Ellis, who, after being by me duly sworn, deposed as follows:

1.      May name is John W. Ellis.  I am over the age of twenty-one (21), have never been convicted of a felony or crime involving moral turpitude, and am fully competent to provide this testimony.  The facts stated herein are within my personal knowledge and are true and correct.

2.      I am an attorney licensed to practice in the State of Texas and have been continuously licensed to practice in Texas since 2011.  I am an Associate in the law firm of Locke Lord LLP ("Locke Lord") in Austin, Texas, and my law firm and I represent Defendant Wells Fargo Bank, N.A., as Trustee for Securitized Asset Backed Receivables L.L.C. 2005-FR4

Mortgage Pass-Through Certificates 2005-FR4 ("Wells Fargo") in the above-captioned matter. I acquired personal knowledge of the facts set forth in this affidavit in that capacity.

3. Attached to my Declaration as **Exhibit A-1** is a true and correct copy of a printout from the Federal Deposit Insurance Corporation, Inc.'s ("FDIC") online BankFind search tool available at http://research.fdic.gov/bankfind/index.html.

4. Attached to my Declaration as **Exhibit A-2** is a true and correct copy of a printout from the Texas Secretary of State's website evidencing U.S. Bank's registered agent.

5. Attached to my Declaration as **Exhibit A-3** is a true and correct copy of a printout from the Texas Secretary of State's website evidencing U.S. Bank's registration for business in Texas and its designation of its registered agent.

6. Attached to my Declaration as **Exhibit A-4** is a true and correct copy of a printout from the Texas Secretary of State's website evidencing Wells Fargo Bank, National Association's registered agent's address.

7. Attached to my Declaration as **Exhibit A-5** is a true and correct copy of a printout from the FDIC's online BankFind search tool showing the first 100 entries of location results for Wells Fargo locations in Texas available at http://research.fdic.gov/bankfind/index.html.

FURTHER AFFIANT SAYETH NOT.

_____
JOHN W. ELLIS

SUBSCRIBED AND SWORN TO BEFORE ME on the ____ day of February, 2015, to certify which witness my hand and official seal.



ROXANE C. GONZALES
MY COMMISSION EXPIRES
March 6, 2015

_____
Notary Public, State of Texas

# Exhibit A-1

**Federal Deposit
Insurance Corporation**

# Wells Fargo Bank, National Association (FDIC #: 3511)

Status: Active • Insured Since January 1, 1934

Wells Fargo Bank, National Association is an active bank

Data as of: February 11, 2015

| **Overview** | Locations | History | Identifications | Financials |
|---|---|---|---|---|

● **Wells Fargo &
Company**
Bank Holding
Company

● **Wells Fargo Bank,
National Association**
Banking Institution

● **6359 Locations**
Branches (Offices)

**Wells Fargo Bank, National Association** has 6359 domestic locations in 42 states, 0 locations in territories, and 37 foreign locations

| | |
|---|---|
| **Established:** | January 1, 1870 |
| **FDIC Certificate #:** | 3511 |
| **Insured:** | January 1, 1934 |
| **Bank Charter Class:** | National Bank |
| **Headquarters:** | 101 N. Phillips Avenue Sioux Falls, SD 57104 Minnehaha County |
| **Regulated By:** | Office of the Comptroller of the Currency |
| **Consumer Assistance:** | http://www.helpwithmybank.gov |
| **Corporate Website:** | http://www.wellsfargo.com |

Contact the FDIC about Wells Fargo Bank, National Association

# Exhibit A-2

# DEPUTY SECRETARY of STATE
# COBY SHORTER, III

### BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY

| | | | |
|---|---|---|---|
| **Filing Number:** | 8832 | **Entity Type:** | Foreign Financial Institution |
| **Original Date of Filing:** | June 21, 2001 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | **Non-Profit Type:** | N/A |
| **Tax ID:** | | **FEIN:** | 941347393 |

| | |
|---|---|
| **Name:** | WELLS FARGO BANK, NATIONAL ASSOCIATION |
| **Address:** | 420 MONTGOMERY ST.<br>San Francisco, CA 94163 [COUNTRY NOT PROVIDED] |
| **Fictitious Name:** | N/A |
| **Jurisdiction:** | , |
| **Foreign Formation Date:** | N/A |

| REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES |
|---|---|---|---|---|---|

| Name | Address | Inactive Date |
|---|---|---|
| CORPORATION SERVICE COMPANY | 211 E. 7th Street, Suite 620<br>Austin, TX 78701-3218 USA | |

Order    Return to Search

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

# Exhibit A-3



Office of the Secretary of State
Corporations Section
P.O. Box 13697
Austin, Texas 78711-3697

FILED
In the Office of the
Secretary of State of Texas

JUN 21 2001

Corporations Section

# OUT-OF-STATE FINANCIAL INSTITUTION
# APPLICATION FOR REGISTRATION

Pursuant to the provisions of section 201.102 of the Finance Code, the undersigned out-of-state financial institution hereby makes this application for registration to operate a branch or other office in Texas:

1.  The name of the financial institution is __Wells Fargo Bank, National Association__ .

2.  A. ☒ The federal tax identification number is __94-1347393__

    B. ☐ The financial institution does not have a federal tax identification number at this time. Upon receipt of its federal tax identification number, the financial institution will notify the secretary of state of the number.

3.  The financial institution was formed under the laws of __United States of America__ on __November 30, 1870__ . The financial institution is a: (check one)
    (Date of incorporation/organization)

    ☐ bank                               ☒ federal bank
    ☐ savings bank                       ☐ federal savings bank
    ☐ savings and loan association       ☐ federal savings and loan association
    ☐ credit union                       ☐ federal credit union
    ☐ trust company

4.  As of the date of execution of this application, the out-of-state financial institution certifies that it validly exists as a financial institution of the type designated in this application under the laws of the state or country of incorporation, formation, or organization.

5.  The address of its principal office is __420 Montgomery Street__
    __San Francisco, CA  94163__

6.  The street address of its proposed registered office in Texas is (a P.O. Box is not sufficient.) __800 Brazos__
    __Austin, TX  78701__

    and the name of its proposed registered agent in Texas at such address is __Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company__

7. The purpose or purposes the financial institution proposes to pursue in the transaction of business in Texas are

commercial banking, including trust activities.

8. The financial institution is authorized to pursue such purpose or purposes in the state or country under the laws of which it is incorporated or organized.

9. The names and respective addresses of its directors are:

| NAME | ADDRESS |
|---|---|
| Patricia R. Callahan | 420 Montgomery St., SF, CA 94163 |
| Ross J. Kari | 420 Montgomery St., SF, CA 94163 |
| Clyde W. Ostler | 420 Montgomery St., SF, CA 94163 |
| Carrie L. Tolstedt | 420 Montgomery St., SF, CA 94163 |
| Paul M. Watson | 333 South Grand Ave., LA, CA 90071 |

10. The amount of its stated capital, if applicable, is $520,152,610 (See instructions for definition of stated capital.)

11. The undersigned person certifies that the statements and information provided in this application are true and correct as of the date of execution indicated below. The undersigned also is on notice that a person commits an offense (classified as a Class A misdemeanor) under the provisions of the Texas Business Corporation Act if the person signs a document the person knows is false in any material respect with the intent that the document be delivered to the secretary of state for filing.

Date: 6/7/01

Wells Fargo Bank, National Association

Name of Financial Institution

By: _Pui-Mei Wong_

Its Assistant Secretary

Authorized Officer



Comptroller of the Currency
Administrator of National Banks

Washington, D C 20219

# CERTIFICATE

I, John D Hawke, Jr., Comptroller of the Currency, do hereby certify that.

1.    The Comptroller of the Currency, pursuant to Revised Statutes 324, et seq., as amended, 12 U.S.C. 1, et seq , as amended, has possession, custody and control of all records pertaining to the chartering of all National Banking Associations

2.    "Wells Fargo Bank, National Association," San Francisco, California, (Charter No 1741) is a National Banking Association formed under the laws of the United States and is authorized thereunder to transact the business of banking on the date of this Certificate.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and caused my seal of office to be affixed to these presents at the Treasury Department in the City of Washington and District of Columbia, this 14th day of June, 2001.



John D. Hawke, Jr.

_____
Comptroller of the Currency

# Exhibit A-4



**Office of the Secretary of State**
**Corporations Section**
**P.O. Box 13697**
**Austin, Texas 78711-3697**
**(Form 408)**

**Filed in the Office of the**
**Secretary of State of Texas**
**Filing #: 8832  10/30/2009**
**Document #: 281713090011**
**Image Generated Electronically**

## STATEMENT OF CHANGE OF
## ADDRESS OF REGISTERED AGENT

1.  The name of the entity represented is
    WELLS FARGO BANK, NATIONAL ASSOCIATION

    The entity's filing number is   8832

2.  The address at which the registered agent has maintained the registered office address for such entity is: (Please provide street address, city, state and zip code presently shown in the records of the Secretary of State.)

    701 Brazos, Suite 1050, Austin, TX  78701

3.  The address at which the registered agent will hereafter maintain the registered office address for such entity is: (Please provide street address, city, state and zip code.  The address must be in Texas.)

    211 E. 7th Street, Suite 620, Austin, TX  78701

4.  Notice of the change of address has been given to said entity in writing at least 10 business days prior to the submission of this filing.

Date:   10/30/2009

Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company
**Name of Registered Agent**

John H. Pelletier, Asst. VP

**Signature of Registered Agent**

**FILING OFFICE COPY**

# Exhibit A-5

**Federal Deposit
Insurance Corporation**

# Wells Fargo Bank, National Association (FDIC #: 3511)

Status: Active • Insured Since January 1, 1934
Wells Fargo Bank, National Association is an active bank
Data as of: February 11, 2015

| Overview | **Locations** | History | Identifications | Financials |

All Locations    |    Matching Search Results    |    View By State    **Current Filter: "TX"**
Number of Offices: 6359 Domestic, 0 Territories, 37 Foreign

Showing 1 to 100 of 687 entries

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|--------|--------|------|---------|--------|------|-------|-----|--------------|
| 824 | 3924 | Madisonville Branch | 207 East Main Street | Madison | Madisonville | TX | 77864 | Full Service Brick Mortar Office |
| 984 | 3784 | Laredo Downtown Branch | 1100 Matamoros Street | Webb | Laredo | TX | 78040 | Full Service Brick Mortar Office |
| 989 | 3824 | Gonzales Branch | 301 North Saint Joseph Street | Gonzales | Gonzales | TX | 78629 | Full Service Brick Mortar Office |
| 1129 | 3825 | Bastrop Branch | 808 Main Street | Bastrop | Bastrop | TX | 78602 | Full Service Brick Mortar Office |
| 1971 | 3874 | Bay City Branch | 1801 7th Street | Matagorda | Bay City | TX | 77414 | Full Service Brick Mortar Office |
| 1991 | 3908 | Brownsville Downtown Branch | 835 East Levee Street | Cameron | Brownsville | TX | 78520 | Full Service Brick Mortar Office |
| 1997 | 3804 | Hillsboro Downtown Branch | 225 East Elm Street | Hill | Hillsboro | TX | 76645 | Full Service Brick Mortar Office |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|---|---|---|---|---|---|---|---|---|
| 2034 | 4147 | Decatur Downtown Branch | 306 W Main Street | Wise | Decatur | TX | 76234 | Full Service Brick Morta Office |
| 2049 | 4086 | El Paso Downtown Branch | 221 North Kansas Street | El Paso | El Paso | TX | 79901 | Full Service Brick Morta Office |
| 2056 | 3933 | Floresville Main Branch | 1112 B Street | Wilson | Floresville | TX | 78114 | Full Service Brick Morta Office |
| 2063 | 3906 | Franklin Branch | 208 East Us Highway 79 | Robertson | Franklin | TX | 77856 | Full Service Brick Morta Office |
| 2086 | 4169 | Grapevine Main Street Branch | 1400 South Main Street | Tarrant | Grapevine | TX | 76051 | Full Service Brick Morta Office |
| 2090 | 3834 | Hallettsville Branch | 110 South Main Street | Lavaca | Hallettsville | TX | 77964 | Full Service Brick Morta Office |
| 2099 | 3778 | Henrietta Branch | 210 North Bridge Street | Clay | Henrietta | TX | 76365 | Full Service Brick Morta Office |
| 2119 | 4166 | Terrell North Catherine Branch | 112 North Catherine Street | Kaufman | Terrell | TX | 75160 | Full Service Brick Morta Office |
| 2162 | 3979 | Mesquite Branch | 120 West Main Street | Dallas | Mesquite | TX | 75149 | Full Service Brick Morta Office |
| 2183 | 3773 | Kell Branch | 2301 Kell Boulevard | Wichita | Wichita Falls | TX | 76308 | Full Service Brick Morta Office |
| 2185 | 3835 | Nordheim Branch | 215 Broadway Street | De Witt | Nordheim | TX | 78141 | Full Service Brick Morta Office |
| 2207 | 3842 | Pleasanton Branch | 425 West Oaklawn Road | Atascosa | Pleasanton | TX | 78064 | Full Service Brick |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|--------|--------|------|---------|--------|------|-------|-----|--------------|
| | | | | | | | | Mortg Office |
| 2211 | 3767 | Post Branch | 216 West Main Street | Garza | Post | TX | 79356 | Full Servic Brick Mortg Office |
| 2212 | 3934 | Poth Branch | 109 Dillworth Plaza | Wilson | Poth | TX | 78147 | Full Servic Brick Mortg Office |
| 2219 | 3878 | Rhome Branch | 101 Highway 287 North | Wise | Rhome | TX | 76078 | Full Servic Brick Mortg Office |
| 2221 | 3852 | Richmond Branch | 700 Jackson Street | Fort Bend | Richmond | TX | 77469 | Full Servic Brick Mortg Office |
| 2223 | 3849 | Rockport Branch | 502 North Austin Street | Aransas | Rockport | TX | 78382 | Full Servic Brick Mortg Office |
| 3730 | 4182 | Rosenberg Branch | 2910 Avenue H | Fort Bend | Rosenberg | TX | 77471 | Full Servic Brick Mortg Office |
| 3736 | 3755 | San Angelo Main Branch | 36 West Beauregard Avenue | Tom Green | San Angelo | TX | 76903 | Full Servic Brick Mortg Office |
| 3740 | 3781 | Northstar Branch | 40 Northeast Loop 410 | Bexar | San Antonio | TX | 78216 | Full Servic Brick Mortg Office |
| 3746 | 3839 | San Marcos Downtown Branch | 123 North Edward Gary Street | Hays | San Marcos | TX | 78666 | Full Servic Brick Mortg Office |
| 3751 | 3838 | Schulenburg Branch | 707 Lyons Avenue | Fayette | Schulenburg | TX | 78956 | Full Servic Brick Mortg Office |
| 3782 | 3769 | Tulia Branch | 101 North Maxwell Avenue | Swisher | Tulia | TX | 79088 | Full Servic Brick Mortg Office |
| 3791 | 3801 | | | Mclennan | Waco | TX | 76701 | |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|---|---|---|---|---|---|---|---|---|
| | | Waco Main Branch | 300 Franklin Avenue | | | | | Full Service Brick Mortar Office |
| 5755 | 3798 | Kerrville Main Branch | 301 Junction Highway | Kerr | Kerrville | TX | 78028 | Full Service Brick Mortar Office |
| 5763 | 3831 | Cuero Branch | 307 North Esplanade Street | De Witt | Cuero | TX | 77954 | Full Service Brick Mortar Office |
| 6615 | 3792 | Alice Main Branch | 1128 East Main Street | Jim Wells | Alice | TX | 78332 | Full Service Brick Mortar Office |
| 6618 | 4036 | Willis Branch | 501 West Montgomery Street | Montgomery | Willis | TX | 77378 | Full Service Brick Mortar Office |
| 6626 | 3829 | Taft Branch | 230 Green Avenue | San Patricio | Taft | TX | 78390 | Full Service Brick Mortar Office |
| 6627 | 4153 | Denton Downtown Branch | 101 South Locust Street | Denton | Denton | TX | 76201 | Full Service Brick Mortar Office |
| 6628 | 3938 | La Vernia Branch | 119 West Chihuahua Street | Wilson | La Vernia | TX | 78121 | Full Service Brick Mortar Office |
| 6868 | 3927 | Navasota Branch | 305 East Washington Avenue | Grimes | Navasota | TX | 77868 | Full Service Brick Mortar Office |
| 7115 | 4023 | Kyle Branch | 5401 S Fm 1626 | Hays | Kyle | TX | 78640 | Full Service Brick Mortar Office |
| 7126 | 3892 | Ed Carey Branch | 1821 South 77 Sunshine Strip | Cameron | Harlingen | TX | 78550 | Full Service Brick Mortar Office |
| 7127 | 3929 | Rio Vista Branch | 501 North Highway 174 | Johnson | Rio Vista | TX | 76093 | Full Service Brick |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|--------|--------|------|---------|--------|------|-------|-----|--------------|
| | | | | | | | | Morta Office |
| 7131 | 3922 | Waller Branch | 2313 Main Street | Waller | Waller | TX | 77484 | Full Servi Brick Morta Office |
| 7133 | 3795 | Bandera Branch | 900 Main Street | Bandera | Bandera | TX | 78003 | Full Servi Brick Morta Office |
| 7377 | 3830 | Angleton Branch | 800 North Loop 274 | Brazoria | Angleton | TX | 77515 | Full Servi Brick Morta Office |
| 7381 | 3803 | Hubbard Branch | 101 Northwest 2nd Street | Hill | Hubbard | TX | 76648 | Full Servi Brick Morta Office |
| 7383 | 3777 | Archer City Branch | 200 North Center Street | Archer | Archer City | TX | 76351 | Full Servi Brick Morta Office |
| 7384 | 4178 | Bellville Branch | 2 East Main Street | Austin | Bellville | TX | 77418 | Full Servi Brick Morta Office |
| 7386 | 4099 | Brenham Main Branch | 2450 Becker Dr | Washington | Brenham | TX | 77833 | Full Servi Brick Morta Office |
| 7611 | 3919 | Centerville Branch | 115 East Saint Marys | Leon | Centerville | TX | 75833 | Full Servi Brick Morta Office |
| 7827 | 3843 | Poteet Branch | 126 South 6th Street | Atascosa | Poteet | TX | 78065 | Full Servi Brick Morta Office |
| 7957 | 3895 | Los Fresnos Branch | 203 North Arroyo Boulevard | Cameron | Los Fresnos | TX | 78566 | Full Servi Brick Morta Office |
| 8214 | 3893 | Donna Branch | 132 South Main Street | Hidalgo | Donna | TX | 78537 | Full Servi Brick Morta Office |
| 8652 | 3779 | | | Howard | Big Spring | TX | 79720 | |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|---|---|---|---|---|---|---|---|---|
| | | Big Spring Branch | 400 South Main Street | | | | | Full Service Brick Mortar Office |
| 8876 | 3764 | Canyon Branch | 2111 4th Avenue | Randall | Canyon | TX | 79015 | Full Service Brick Mortar Office |
| 9005 | 3791 | Robstown Branch | 1024 Texas Yes Boulevard | Nueces | Robstown | TX | 78380 | Full Service Brick Mortar Office |
| 9083 | 3752 | Thousand Oaks Branch | 16414 San Pedro Avenue | Bexar | San Antonio | TX | 78232 | Full Service Brick Mortar Office |
| 9693 | 3921 | Brookshire Branch | 923 Cooper Street | Waller | Brookshire | TX | 77423 | Full Service Brick Mortar Office |
| 9702 | 3828 | Seguin Branch | 101 East Nolte Street | Guadalupe | Seguin | TX | 78155 | Full Service Brick Mortar Office |
| 9799 | 3877 | Boyd Branch | 201 West Rock Island Ave | Wise | Boyd | TX | 76023 | Full Service Brick Mortar Office |
| 9813 | 4100 | Sw Military Branch | 3570 Military Drive, S.W. | Bexar | San Antonio | TX | 78211 | Full Service Brick Mortar Office |
| 10065 | 3973 | Dallas Central Branch | 1445 Ross Avenue | Dallas | Dallas | TX | 75202 | Full Service Brick Mortar Office |
| 10085 | 3812 | Stockyards Branch | 200 Ne 28th Street | Tarrant | Fort Worth | TX | 76164 | Full Service Brick Mortar Office |
| 10090 | 3904 | South Mcallen Branch | 1100 East Jackson Avenue | Hidalgo | Mcallen | TX | 78503 | Full Service Brick Mortar Office |
| 10432 | 3918 | Katy Main Branch | 5622 3rd Street | Harris | Katy | TX | 77493 | Full Service Brick |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|--------|--------|------|---------|--------|------|-------|-----|--------------|
| | | | | | | | | Morta Office |
| 10650 | 4094 | Port City Branch | 3601 Eastex Freeway | Harris | Houston | TX | 77026 | Full Servic Brick Morta Office |
| 10738 | 3805 | Fort Worth Medical Center Branch | 900 West Rosedale Street | Tarrant | Fort Worth | TX | 76104 | Full Servic Brick Morta Office |
| 10931 | 4022 | Westside Branch | 109 North San Saba Street | Bexar | San Antonio | TX | 78207 | Full Servic Brick Morta Office |
| 10934 | 3822 | Edna Branch | 700 North Wells Street | Jackson | Edna | TX | 77957 | Full Servic Brick Morta Office |
| 10937 | 4095 | Commercial Branch | 3434 Tidwell Rd | Harris | Houston | TX | 77093 | Full Servic Brick Morta Office |
| 11014 | 3820 | Victoria Downtown Branch | 1201 North Main Street | Victoria | Victoria | TX | 77901 | Full Servic Brick Morta Office |
| 11030 | 3768 | Denver City Branch | 221 North Avenue B | Yoakum | Denver City | TX | 79323 | Full Servic Brick Morta Office |
| 11161 | 3815 | Belknap Branch | 4900 East Belknap Street | Tarrant | Haltom City | TX | 76117 | Full Servic Brick Morta Office |
| 11207 | 3949 | River Oaks Branch | 1500 Waugh Drive | Harris | Houston | TX | 77019 | Full Servic Brick Morta Office |
| 11385 | 4185 | Austin Ave - Georgetown Branch | 1111 South Austin Avenue | Williamson | Georgetown | TX | 78626 | Full Servic Brick Morta Office |
| 11429 | 3920 | Fairfield Branch | 527 East Commerce Street | Freestone | Fairfield | TX | 75840 | Full Servic Brick Morta Office |
| 11523 | 9159 | | | Hardin | Lumberton | TX | 77657 | |

| UNINUM | Number | Name | Address | County | City | State | Zip | Servic Type |
|--------|--------|------|---------|--------|------|-------|-----|-------------|
| | | Lumberton Branch | 435 South Main | | | | | Full Servic Brick Morta Office |
| 11529 | 3774 | Nocona Branch | 105 East Highway 82 | Montague | Nocona | TX | 76255 | Full Servic Brick Morta Office |
| 11643 | 3789 | Kelly Field Branch | 6100 Bandera Road | Bexar | San Antonio | TX | 78238 | Full Servic Brick Morta Office |
| 11750 | 3943 | Deer Park Branch | 715 Center Street | Harris | Deer Park | TX | 77536 | Full Servic Brick Morta Office |
| 11795 | 3797 | Comfort Branch | 520 7th Street | Kendall | Comfort | TX | 78013 | Full Servic Brick Morta Office |
| 12003 | 3948 | Fairbanks Branch | 13201 Northwest Freeway | Harris | Houston | TX | 77040 | Full Servic Brick Morta Office |
| 12138 | 4012 | East Berry Branch | 1001 East Berry Street | Tarrant | Fort Worth | TX | 76110 | Full Servic Brick Morta Office |
| 12322 | 3941 | Pasadena Branch | 4200 Spencer Highway | Harris | Pasadena | TX | 77504 | Full Servic Brick Morta Office |
| 12380 | 3794 | Premont Branch | 120 South Agnes Street | Jim Wells | Premont | TX | 78375 | Full Servic Brick Morta Office |
| 12431 | 3980 | Boulevard 26 Branch | 6964 Boulevard 26 | Tarrant | Richland Hills | TX | 76180 | Full Servic Brick Morta Office |
| 12432 | 3967 | Bedford Central Branch | 2225 Central Drive | Tarrant | Bedford | TX | 76021 | Full Servic Brick Morta Office |
| 12435 | 3956 | Seabrook Branch | 1600 Highway 146 | Harris | Seabrook | TX | 77586 | Full Servic Brick |

| UNINUM | Number | Name | Address | County | City | State | Zip | Servic Type |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Morta Office |
| 12487 | 4089 | Bassett Branch | 6175 Gateway Boulevard West | El Paso | El Paso | TX | 79925 | Full Servic Brick Morta Office |
| 12500 | 3875 | West Columbia Branch | 111 West Brazos Avenue | Brazoria | West Columbia | TX | 77486 | Full Servic Brick Morta Office |
| 12508 | 3912 | Corpus Christi Flour Bluff Branch | 1190 Waldron Road | Nueces | Corpus Christi | TX | 78418 | Full Servic Brick Morta Office |
| 12700 | 3846 | Victoria Sam Houston Branch | 1501 East Mockingbird Lane | Victoria | Victoria | TX | 77904 | Full Servic Brick Morta Office |
| 12702 | 3765 | Plainview Main Branch | 205 West 5th Street | Hale | Plainview | TX | 79072 | Full Servic Brick Morta Office |
| 12705 | 9176 | Bandera & St Cloud Branch | 100 St. Cloud | Bexar | San Antonio | TX | 78228 | Full Servic Brick Morta Office |
| 12757 | 3826 | Kingsville Main Branch | 601 South 14th Street | Kleberg | Kingsville | TX | 78363 | Full Servic Brick Morta Office |
| 12772 | 3972 | Oak Cliff Branch | 5801 Marvin D. Love Freeway | Dallas | Dallas | TX | 75237 | Full Servic Brick Morta Office |
| 12835 | 3954 | Memorial Branch | 901 Gessner Road | Harris | Houston | TX | 77024 | Full Servic Brick Morta Office |
| 13039 | 9164 | Silsbee Branch | 401 Highway 96 South | Hardin | Silsbee | TX | 77656 | Full Servic Brick Morta Office |
| 13154 | 9185 | La Porte Branch | 1001 Highway 146 | Harris | La Porte | TX | 77571 | Full Servic Brick Morta Office |
| 13209 | 3957 | | | Harris | Spring | TX | 77373 | |

| UNINUM | Number | Name | Address | County | City | State | Zip | Service Type |
|---|---|---|---|---|---|---|---|---|
|  |  | Spring Branch | 1442 Spring Cypress Road |  |  |  |  | Full Service Brick Morta Office |

# Exhibit B

FILED
1/20/2015 9:33:00 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Lisa Morales



# The State of Texas
## Secretary of State

2015-246898-2

I, the undersigned, as Secretary of State of Texas DO HEREBY CERTIFY that according to the records of this office, a copy of the Citation and Plaintiff's Original Petition in the cause styled:

Kingman Holdings LLC VS Wells Fargo NA Et al
73rd Judicial District Court Of Bexar County, Texas
Cause No: 2014CI17188

was received by this office on November 14, 2014, and that a copy was forwarded on November 25, 2014, by CERTIFIED MAIL, return receipt requested to:

Wells Fargo Bank NA As Trustee For Securitized Asset Backed
Receivables LLC 2005 FR4 Mortgage Pass Through Certificates Series
2005-FR4
420 Montgomery Street
San Francisco, CA 94104

The RETURN RECEIPT was received in this office dated December 2, 2014, According to the USPS.Com Track & Confirm, the item was delivered.



Date issued: January 20, 2015

*Nandita Berry*

Nandita Berry
Secretary of State

GF/mo

# Exhibit C



2014CI17188 -0073

## CAUSE NO.: 2014-CI-17188

| | | |
|---|---|---|
| KINGMAN HOLDINGS, L.L.C., As Trustee of the MANDERLY PLACE 8118 LAND TRUST | §<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | §<br>§ | |
| WELLS FARGO BANK, N.A. AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES L.L.C. 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-FR4, and FREMONT REORGANIZING CORPORATION F/K/A FREMONT INVESTMENT & LOAN | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 73rd JUDICIAL DISTRICT |
| Defendants. | §<br>.§ | BEXAR COUNTY, TEXAS |

## FINAL DEFAULT JUDGMENT

On this day the Court considered Plaintiff's Motion for Default Judgment. Plaintiff appeared through counsel. Defendants Wells Fargo Bank, N.A., as trustee, and Fremont Reorganizing Corporation, although duly cited and served with process, have failed to answer this suit and have wholly made default. The Court finds it has jurisdiction to hear this case, and all parties entitled to citation have been duly cited. Upon consideration of the motion, the Court finds it should be and is hereby GRANTED.

IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Plaintiff, KINGMAN HOLDINGS, L.L.C., as trustee of the MANDERLY PLACE 8118 LAND TRUST, is hereby awarded judgment in its favor, as pled for in its petition.

This Judgment involves the following real property, to wit:

**Address:** 8118 Manderly Place, San Antonio, Texas 78109

**Legal Description:** Lot 18, Block 5, New City Block 18175, Northampton, Unit 1, City of San Antonio, Bexar County, Texas, according to plat recorded in Volume 9516, Pages 171-177, Deed and Plat Records of Bexar County, Texas (henceforth the "Property").

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that title to the Property is quieted unto and in favor of Plaintiff, KINGMAN HOLDINGS, L.L.C., as trustee of the MANDERLY PLACE 8118 LAND TRUST, and the same shall have sole and full title of the Property, in fee simple, without any liens or encumbrances thereupon; the same, if any, hereby being voided and held void as extinguished by this Judgment.

This is a final judgment which disposes of all claims, parties, and controversies and is appealable. All relief not expressly granted herein is DENIED.

SIGNED and ENTERED on ___January 21, 2015___

_____
JUDGE PRESIDING

AGREED TO & ENTRY REQUESTED:

_____
THE NICHOLS LAW FIRM, PLLC
By: Justin P. Nichols (TBN: 24081371)
115 E. Travis St., Ste. 1740
San Antonio, Texas 78260
(210) 354-2300 [p] | (800) 761-5782 [f]
**ATTORNEY FOR PLAINTIFF**

# Exhibit D



# Bexar County

## District Clerk/County Clerk Search

# Full Case Information

# Case Summary

## Case Information for Cause #: 2014CI17188

**KINGMAN HOLDINGS LLC vs WELLS FARGO NA ET AL**

| | |
|---|---|
| **Cause No. :** | 2014CI17188 |
| **Name :** | |
| **Business Name :** | WELLS FARGO BANK NA |
| **Litigant Type :** | DEFENDANT |
| **Date Filed :** | 10/30/2014 |
| **Docket Type :** | QUIET TITLE |
| **Case Status :** | DISPOSED |
| **Court :** | 073 |

*Information as of: 02/19/2015 07:51:28 PM*

# Case History

*Currently viewing 1 through 16 of 16 records.*

| Type/Sequence | Date Filed | Description |
|---|---|---|
| P00001 | 10/30/2014 | PETITION |
| P00002 | 11/4/2014 | CIVIL CASE INFORMATION SHEET |
| P00003 | 11/4/2014 | REQUEST FOR SERVICE AND PROCESS |
| P00004 | 11/4/2014 | SERVICE ASSIGNED TO CLERK 1 |
| S00001 | 11/5/2014 | CITATION<br>WELLS FARGO BANK NA<br>ISSUED: 11/5/2014 RECEIVED: 11/13/2014<br>EXECUTED: 11/14/2014 RETURNED: 11/17/2014 |
| S00002 | 11/5/2014 | CITATION<br>FREMONT REORGANIZING CORPORATION<br>ISSUED: 11/5/2014 RECEIVED: 11/13/2014<br>EXECUTED: 11/14/2014 RETURNED: 11/17/2014 |
| P00006 | 12/23/2014 | CERTIFICATE OF SECRETARY OF STATE/<br>KYLE R WALKER |
| P00007 | 1/20/2015 | CERTIFICATE OF SECRETARY OF STATE/<br>TO WELLS FARGO BANK NA |
| P00008 | 1/21/2015 | CERTIFICATE OF LAST KNOWN MAILING ADDRESS FOR:<br>WELLS FARGO BANK NA AND FREMONT REORGANI<br>ZATION CORP FKA FREMONT INVESTMENT &<br>LOAN |
| P00009 | 1/21/2015 | MOTION FOR DEFAULT JUDGMENT |
| P00010 | 1/21/2015 | CASE CLOSED DEFAULT JUDGMENT |
| O00001 | 1/21/2015 | DEFAULT JUDGMENT<br>JUDGE: JOHN D. GABRIEL, JR.<br>VOL: 4338 PAGE: 393 PAGE COUNT: 2 |
| S00003 | 1/26/2015 | NOTICE OF ORDER RULE 306A<br>JUSTIN P NICHOLS<br>ISSUED: 1/26/2015 |
| S00004 | 1/26/2015 | NOTICE OF DEFAULT JUDGMENT<br>WELLS FARGO BANK NA<br>ISSUED: 1/26/2015 |
| S00005 | 1/26/2015 | NOTICE OF DEFAULT JUDGMENT<br>FREMONT REORGANIZING CORPORATION |

| | | ISSUED: 1/26/2015 |
| | | RETURNED: 2/10/2015 |

# Exhibit E

FILED
11/17/2014 3:08:11 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Jode Sanchez

PRIVATE PROCESS

Case Number: 2014-CI-17188

**KINGMAN HOLDINGS LLC**
**VS.**
**WELLS FARGO NA ET AL**
(Note:Attached Document May Contain Additional Litigants.)

2014CI17188 S00601

IN THE DISTRICT COURT
73rd JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

## CITATION

"THE STATE OF TEXAS"

Directed To: WELLS FARGO BANK NA AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS THROUGH CERTIFICATES SERIES 2005-FR4

BY SERVING ITS REGISTERED AGENT, SECRETARY OF STATE OF TEXAS

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 30th day of October, 2014.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 5TH DAY OF NOVEMBER A.D., 2014.

PETITION

JUSTIN P NICHOLS
ATTORNEY FOR PLAINTIFF
106 S SAINT MARYS ST 255
SAN ANTONIO, TX 78205-3601



**Donna Kay McKinney**
**Bexar County District Clerk**
**101 W. Nueva, Suite 217**
**San Antonio, Texas 78205**

By: *Antonio Morales,* Deputy

### OFFICER'S RETURN

I received this citation on _____ at _____ o'clock ____M. and:( ) executed it by delivering a copy of the citation with the date of delivery endorsed on it to the defendant,_____ in person on the _____ at _____o'clock ____M. at:_____ or ( ) not executed because _____ Fees:_____ Badge/PPS #:_____ Date certification expires:_____

_____County, Texas

By:_____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO this _____.

NOTARY PUBLIC, STATE OF TEXAS

OR: My name is_____, my date of birth is_____, and my address is _____, _____(County). I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of_____, 20_____.

_____
Declarant

ORIGINAL (DK002)

# Exhibit F

# AFFIDAVIT

## CAUSE NO. 2014-CI-17188

Came to my hand 11/13/2014 at 04:00 PM

- Citation
- Plaintiff's Original Petition

Executed by me on 11/14/2014 at 01:45 PM

Executed at 1019 Brazos, Austin, TX 78701 within the county of Travis, by delivering to Wells Fargo NA as Trust For Securitized Asset Backed Receivables LLC, via The Texas Secretary of State, and accepted by authorized agent, Helen Lupercio, in person, a true copy of the above specified civil process, having first endorsed on such copy the date of delivery.

I am over the age of 18; and I am not a party to nor interested in the outcome of the above styled and numbered suit.

By: _____

Corin E. Sparre
SCH-5625 exp. 9/30/15
SPARRE PROCESS SERVING

**STATE OF TEXAS**

## VERIFICATION

Before me, a notary public, on this day personally appeared the above named person, known to me to be the person whose name is subscribed to the foregoing document and, being by me first duly sworn, declared that the statements and facts therein contained are within his/her personal knowledge to be true and correct.

**SUBSCRIBED AND SWORN TO BY** Corin E. Sparre, on this the ___14th___ day of ___November___, 20 14 to attest witness my hand and seal of office.

TRENT A. DAVIS, II
Notary Public, State of Texas
My Commission Expires
April 01, 2018

Notary Public in and
for the State of Texas

# Exhibit G

T/GF # 121004265 /BRANCH AO

FF$ 60 /CLOSER INITIALS AC

Return To:
FREMONT INVESTMENT & LOAN

1411 OPUS PLACE, SUITE 600
DOWNERS GROVE, IL 60515

Prepared By:
DENNIS P. SCHWARTZ
SCHWARTZ & ASSOCIATES
1446 HERITAGE DRIVE
MCKINNEY, TEXAS 75069
972-562-1966

LT1-77-20050053940-1

———————————————— [Space Above This Line For Recording Data] ————————————————

# DEED OF TRUST

MIN 1001944-5000141013-4

## NOTICE OF CONFIDENTIALITY RIGHTS:

**If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the public records: your social security number or your driver's license number.**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **MARCH 11, 2005**          , together with all Riders to this document.

(B) "Borrower" is

LUCILLE W. ALLEN AND HUSBAND, DOUGLAS ALLEN

Borrower is the grantor under this Security Instrument.

(C) "Lender" is
FREMONT INVESTMENT & LOAN

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF CALIFORNIA
Lender's address is
175 NORTH RIVERVIEW DRIVE, ANAHEIM, CA 92808
Lender includes any holder of the Note who is entitled to receive payments under the Note.

925000141013

TEXAS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Form 3044 1/01                                  VMP Mortgage Solutions, Inc. (800)521-7291

-6A(TX) (0411)                                    Page 1 of 16                          Initials:

LT2-11275-1338-24

(D) "Trustee" is
DENNIS P. SCHWARTZ
Trustee's address is
1446 HERITAGE DRIVE, MCKINNEY, TX 75069
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is a beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated MARCH 11, 2005
The Note states that Borrower owes Lender
ONE HUNDRED FIVE THOUSAND THREE HUNDRED AND 00/100
Dollars (U.S. $105,300.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2035 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider   [ ] Second Home Rider
[ ] Balloon Rider   [X] Planned Unit Development Rider   [ ] 1-4 Family Rider
[ ] VA Rider   [ ] Biweekly Payment Rider
[ ] Other(s) [specify]


(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

925000141013

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of **BEXAR** :

[Name of Recording Jurisdiction]

LOT 18, BLOCK 5, NCB 18175, NORTHAMPTON, UNIT 1, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO PLAT, RECORDED IN VOLUME 9516, PAGES 171-177, DEED AND PLAT RECORDS, BEXAR COUNTY, TEXAS.

Parcel ID Number:

which currently has the address of
8118 MANDERLY PL.                                                                      [Street]
SAN ANTONIO                          [City], Texas 78109           [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this

925000141013

Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

925000141013

 

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

925000141013

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

925000141013

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

925000141013

 

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

925000141013

-6A(TX) (0411)                          Page 9 of 16                    Initials: ___                    Form 3044   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

925000141013

-6A(TX) (0411)                          Page 10 of 16                Initials: _____        **Form 3044  1/01**

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan

925000141013

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

925000141013

-6A(TX) (0411)                    Page 13 of 16          Initials: _____          Form 3044   1/01

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. **Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

[X] **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

[ ] **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the**

925000141013

Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
LUCILLE W. ALLEN                              -Borrower

_____

_____ (Seal)
DOUGLAS ALLEN                                 -Borrower



_____ (Seal)    _____ (Seal)
                     -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                                 -Borrower

_____ (Seal)    _____ (Seal)
                     -Borrower                                 -Borrower

925000141013

**STATE OF TEXAS**

County of _____ Bexar _____

Before me _____ a Notary Public _____ on this day personally appeared
**LUCILLE W. ALLEN AND DOUGLAS ALLEN**

known to me (or proved to me on the oath of _____
or through _____ TXDL _____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this _____ day of **MARCH** , **2005** .

(Seal)

AUTUMN COOKE
Notary Public State of Texas
My Commission Exp. Jan. 31, 2009

_____
Notary Public

My Commission Expires: _1/31/09_____

925000141013

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **11TH** day of **MARCH** , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **FREMONT INVESTMENT & LOAN**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**8118 MANDERLY PL., SAN ANTONIO, TEXAS 78109**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **4195/1325, REAL PROPERTY RECORDS OF BEXAR COUNTY, TEXAS**

(the "Declaration"). The Property is a part of a planned unit development known as

**NORTHAMPTON, UNIT 1**
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

925000141013

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
**Form 3150 1/01** Page 1 of 3
**VMP®-7R** (0411) VMP Mortgage Solutions, Inc. (800)521-7291 Initials: _____

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

925000141013

-7R (0411)        Page 2 of 3     Initials:      Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
LUCILLE W. ALLEN          -Borrower      DOUGLAS ALLEN           -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                              -Borrower

925000141013

VMP-7R (0411)                Page 3 of 3                Form 3150 1/01

Return To:
FREMONT INVESTMENT & LOAN

1411 OPUS PLACE, SUITE 600
DOWNERS GROVE, IL 60515

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this 11TH day of MARCH , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

FREMONT INVESTMENT & LOAN
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

8118 MANDERLY PL., SAN ANTONIO, TEXAS 78109
[Property Address]

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of 7.6500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the 1ST day of APRIL , 2007 , and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

925000141013

**MULTISTATE ADJUSTABLE RATE RIDER** - Single Family
**1/01**                                Page 1 of 5
**VMP-899R** (0402)        VMP Mortgage Solutions, Inc. (800)521-7291        Initials: _KA CA_

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is: **the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in** *The Wall Street Journal.*

The most recent Index figure available as of the date: [X] 45 days [ ] _____ before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & 99/100                                                    percentage points ( 6.9900 %) to the Current Index. The Note Holder will then round the result of this addition to the [X] Nearest      [ ] Next Highest      [ ] Next Lowest **one-eighth of one percentage point (0.125%).** Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**Interest-Only Period**

N/A The "Interest-only Period" is the period from the date of this Note through _____ . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

925000141013

Initials: _RH ᴅ_

VMP-899R (0402)                Page 2 of 5

**(D) Limits on Interest Rate Changes**
**(Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.)**

☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than          10.6500 % or less than          7.6500 %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than **ONE & ONE-HALF**     percentage points ( 1.5000   %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than          14.6500 %, which is called the "Maximum Rate."

☒ (5) My interest rate will never be less than          7.6500%, which is called the "Minimum Rate."

☒ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than          10.6500 % or less than          7.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE & ONE-HALF** percentage points (          1.5000 %) from the rate of interest I have been paying for the preceding period.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initials: _____    925000141013

**VMP-899R** (0402)          Page 3 of 5

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _AA ay_      925000141013

**VMP-899R** (0402)      Page 4 of 5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
LUCILLE W. ALLEN              -Borrower   DOUGLAS ALLEN              -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                             -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                             -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                             -Borrower


925000141013

VMP-899R (0402)          Page 5 of 5

Return To:
FREMONT INVESTMENT & LOAN

1411 OPUS PLACE, SUITE 600
DOWNERS GROVE, IL 60515

Any provision herein which restricts the sale, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on

MAR 1 4 2005

COUNTY CLERK BEXAR COUNTY, TEXAS

Doc# 20050053940 Fees: $60.00
03/14/2005   3:57PM # Pages 24
Filed & Recorded in the Official Public
Records of  BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

# Exhibit H

ASSIGNMENT OF NOTE
AND DEED OF TRUST

Loan No.: 71531615
BBWCDF No.: 20060031406115
Investor/Loan Type: Conventional

Date of Assignment:     Effective September 6, 2006

Assignor:     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER AND LENDERS SUCCESSORS AND ASSIGNS

Assignee:     **WELLS FARGO BANK, NATIONAL ASSOCIATION AS TRUSTEE FOR SECURITIZED ASSET BACKED RECEIVABLES LLC 2005-FR4 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-FR4**

Assignee's Mailing Address:     9062 OLD ANAPOLIS ROAD
(including county)     COLUMBIA, MD 21045

LT1-77-20060268861-1

NOTE and DEED OF TRUST--

Maker/Grantor:     DOUGLAS ALLEN
LUCILLE W. ALLEN

LT2-12499-2479-3

Date:     March 11, 2005

Original Amount:     $ 105,300.00

Payee:     MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER AND LENDERS SUCCESSORS AND ASSIGNS

Trustee:     DENNIS P. SCHWARTZ

Recording Information:     VOLUME 11275, PAGE 1338
(including county)     (BEXAR)

Property (including any improvements) Subject to Deed of Trust:

LOT 18, BLOCK 5, NCB 18175, NORTHAMPTON, UNIT 1, CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO PLAT, RECORDED IN VOLUME 9516, PAGES 171-177, DEED AND PLAT RECORDS, BEXAR COUNTY, TEXAS.

ASSG20060031406115

ASSIGNMENT OF NOTE
AND DEED OF TRUST

Loan No.: 71531615
BBWCDF No.: 20060031406115
Investor/Loan Type: Conventional

WHEREAS, on the date of assignment indicated above, for value received, Holder of the Note and Deed of Trust transferred and assigned each to Assignee, and warranted that the lien was valid against the property in the priority indicated; and

WHEREAS, the Holder of the Note and Deed of Trust and the Assignee desire to evidence and memorialize such transfer and assignment and warranty by this document;

NOW THEREFORE, for value received Holder of the Note and Deed of Trust does hereby evidence and memorialize its transfer and assignment of the Note and Deed of Trust to Assignee on the date of assignment indicated above.

When the context requires, singular nouns and pronouns include the plural.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER AND LENDERS SUCCESSORS AND ASSIGNS

BY: _____

ITS: _____

CORPORATE ACKNOWLEDGMENT

State of _Texas_ §

County of _Dallas_ §

Before me, the undersigned Notary Public, on this day personally appeared _David Seybold_, who is the ASSISTANT SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR LENDER AND LENDERS SUCCESSORS AND ASSIGNS, a corporation, on behalf of said corporation, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _26_ day of _October_, 2006.

_____
Notary Public Signature

My Commission Expires _____

SHARON L. VAUGHAN
Notary Public
State of Texas
My Comm. Exp 04-22-2010

Printed Name of Notary Public

PREPARED BY AND AFTER RECORDING RETURN TO: BBWCDF, L.L.P.
15000 Surveyor Boulevard, Suite 100, Addison, Texas 75001

Doc# 20060268861 Fees: $24.00
11/06/2006   10:20AM # Pages 3
Filed & Recorded in the Official Public
Records of  BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, or use of the described real
property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby certify that this instrument was FILED in File Number Sequence on
the date and at the time stamped hereon by me and was duly RECORDED
in the Official Public Record of Real Property of Bexar County, Texas on:

NOV 0 6 2006

COUNTY CLERK BEXAR COUNTY, TEXAS